## THE ISABEL H.

### THE MOHAWK.

UNITED STATES v. 3190 BAGS, 228 CASES, AND 17 KEGS CONTAINING RYE WHISKY AND SCOTCH WHISKY (CHARTIER, Claimant).

Nos. 104—117, 104—158, 104—303.

District Court, S. D. New York.

March 3, 1933.

George Z. Medalie, of New York City (G. R. Pfann, of New York City, of counsel), for the United States.

Louis Halle, of New York City (Milton R. Kroopf, of New York City, of counsel), for claimants.

PATTERSON, District Judge.

Three libels were tried together. The first is against the British vessel Isabel H. It alleges that the vessel, with a cargo of intoxicating liquor worth $124,020, was seized at a point within twelve miles of the coast of the United States; that the master failed to produce a manifest on demand; that the liquor was unmanifested; and that the vessel thereby became liable for a penalty of $500 and also a penalty equal to the value of the liquor. As a further cause of action, it is alleged that liquor of a value of $8,460 had been unloaded from the Isabel before arriving at the proper place for discharge of cargo and before getting permission to unload, the vessel thereby becoming subject to a penalty of twice the value of the goods unloaded. The second libel is against the launch Mohawk, seized at the same time. It alleges that this vessel licensed under laws of the United States became forfeited because engaged in the unlawful transportation of intoxicating liquor, a trade other than that for which it had been licensed, and also because of proceeding on a foreign voyage without giving up enrollment and license and without registry. The third is against the liquor on the Isabel, alleged to be forfeited because not included in any manifest of cargo.

On the trial a motion to amend the libels was granted, so as to allege that the seizure was at a point within one hour's distance of the coast by the Mohawk, the vessel in which the liquor transferred from the Isabel was to be conveyed to the United States, as well as within twelve miles from the coast. Claimants of the vessels and of the liquor appeared and denied the material allegations in the libels.

The cases are the result of the seizure of the two vessels and cargo by the coast guard destroyer Trippe at a point south of Amagansett, Long Island, on February 21, 1930. It was proved that at 9 o'clock in the evening the two vessels were caught in the act of transshipping cases of whisky from the Isabel to the Mohawk. The Isabel was a Canadian vessel cruising off the coast with a large cargo of liquor, and the Mohawk was a vessel of the United States which had gone out to receive part of the cargo and transport it to the shore. Some of the liquor had already been placed on board the Mohawk when the Trippe interrupted the operation. No manifest was produced by the Isabel, although demanded by the seizing officer, and the fact is that she carried no manifest. The value of the liquor seized on board the Isabel was $124,020; the value of that on the Mohawk was $8,460. The latter vessel had been licensed for the coasting trade.

The only questions of fact are, first, Was the seizure within twelve miles of the coast, and, second, Was it within an hour's time of the coast by the speed of the Mohawk? Unless the answer to both of these questions is in the affirmative, the seizure was unlawful and the libels must be dismissed. Under the Tariff Act of 1922 (42 Stat. 858), modified as it was by the Treaty with Great Britain of May 22, 1924 (43 Stat. 1761), the right to seize a British vessel for violation of the law prohibiting the importation of intoxicating liquors can be exercised only when the vessel is within the twelve-mile zone and also within one hour's time from the coast, with the qualification that in cases where the liquor is to be conveyed to the shore by another vessel, it shall be the speed of such other vessel that shall determine the distance from the coast. Cook v. United States, 53 S. Ct. 305, 77 L. Ed. ——, decided by the Supreme Court on January 23, 1933.

1. The proof is convincing that the seizure occurred at a point well within the twelve-mile limit. The Trippe on making the seizure anchored at the spot, the two boarded ships being lashed alongside, and later on other coast guard vessels arrived. The radio bearings of the Trippe, taken twice while anchored at the place, fixed her position as 10.1 miles from the nearest coast. These bearings were from stations not far distant, with a good angle between them, and there is no reasonable doubt as to their accuracy. They are quite consistent with the earlier positions of the Trippe as indicated by sets of radio bearings and by the courses run, despite the claimants' argument to the contrary. Of equal or greater weight are the

sights on the sun that were taken after the seizure. One of the vessels that had come up later and had anchored at the same place remained there until February 23rd, when the weather became clear enough to permit the taking of sights. The sights on the sun, taken by an experienced navigator, gave the position as between nine and ten miles offshore. The soundings that were taken at the place under the most exacting conditions indicated a depth of twenty fathoms or slightly over, which was consistent with the position fixed by radio bearings and sun sights.

There is no substantial evidence that the seizure was at a greater distance from the shore. The testimony of the master of the Isabel that his vessel was fourteen miles off is no better than a rough guess on his part. Admittedly he had no way of verifying his position with any accuracy; he had no equipment for getting radio bearings; his last sun sights had been taken at noon on the 21st, and he had been under way for the nine hours intervening between that time and the seizure. His statement as to soundings taken by him at the place of seizure is rejected as in conflict with more credible evidence to the contrary.

The claimants' case is really based upon the proposition that the Trippe, prior to anchoring, made for the coast with the two seized vessels in tow and covered some four or five miles before dropping anchor. This proposition is an indispensable one for the claimants since the place of anchorage was proved beyond the slightest doubt to be only nine or ten miles from the coast. But there is no evidence to support the proposition, which is merely an assumption by counsel. On the contrary the proof is that the Trippe anchored at approximately the place where it made the seizure. I am satisfied that the coast guard witnesses have told the truth as to the seizure and that both vessels were taken at a place only nine or ten miles from the coast.

■ 2. The remaining question is the speed of the Mohawk. On a trial run made the next morning from the place of seizure to the coast between Amagansett and Montauk, the time was fifty minutes, a speed of about twelve knots. On another run made the afternoon of the same day, with engine trouble cutting down the performance, the speed was

about ten knots. On still another trial run the following day, the Mohawk showed a speed of eleven knots under wind and current conditions somewhat adverse. She was observed a month or so prior to the seizure to make fourteen knots. The proof as to the foregoing came from witnesses who impressed me as truthful and accurate and whose testimony is in my opinion a portrayal of the real facts.

The only testimony in favor of the claimants as to the Mohawk's speed came from a builder of yachts who examined the Mohawk nearly three years after the seizure and ventured the opinion, from an inspection of her engines and estimates of her weight, that her maximum speed was ten statute miles an hour, which is between eight and nine knots. The witness did not take the boat out for a run. It was not shown that the vessel was in the same condition as at the time of seizure. Evidence as remote and intangible as this cannot prevail over dependable proof of what the boat actually accomplished a day or two after the seizure. The preponderance of proof shows that the Mohawk had a speed of at least twelve nautical miles an hour and from the place of seizure could have reached shore in less than one hour under the conditions prevailing at the time and place of seizure.

■ The Mohawk is forfeited under section 4377 of the Revised Statutes (46 USCA § 325) for carrying on a business other than that for which licensed. United States v. The Ruth Mildred, 286 U. S. 67, 52 S. Ct. 473, 76 L. Ed. 981. The Isabel is subject to a penalty of $500 for nonproduction of a manifest and to a penalty of $124,020 as the value of the unmanifested cargo of liquor, by reasons of sections 584 and 594 of the Tariff Act of 1922 then in force (19 USCA §§ 486, 498), and further to a penalty of $16,920 for unloading cargo before arrival at the proper place for discharge, by reason of section 586 (19 USCA § 488). General Import & Export Co. v. United States, 286 U. S. 70, 52 S. Ct. 474, 76 L. Ed. 983. The liquor seized on the Isabel is forfeited under section 584 (19 USCA § 486).

There will be appropriate decrees in favor of the United States in the three cases.